J-A16029-17 & J-A16030-17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: M.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: W.M., SR., AND D.M. | : | No. 124 WDA 2017 |

Appeal from the Order, December 15, 2016,
in the Court of Common Pleas of Westmoreland County
Civil Division at No: CP-65-DP-64-2014

| | | |
|---|---|---|
| W.M., SR., AND D.M., | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | No. 11 WDA 2017 |
| v. | : | |
| | : | |
| WESTMORELAND COUNTY | : | |
| CHILDREN'S BUREAU | : | |

Appeal from the Order Entered December 1, 2016,
in the Court of Common Pleas of Westmoreland County
Civil Division at No. 2245 of 2015-D

BEFORE:    STABILE, J., FORD ELLIOTT, P.J.E., and STRASSBURGER, J.*

CONCURRING MEMORANDUM BY STRASSBURGER, J.

**FILED: September 11, 2017**

I join the Majority's memorandum but write separately to comment upon the procedure in this case. As the Majority ably describes in more detail, this case involves a custody petition filed by appellants, who are M.M.'s paternal grandparents, pursuant to the Child Custody Act, 23 Pa.C.S. §§ 5321–5340, well after M.M. became a dependent child in the legal custody of Westmoreland County Children's Bureau (the "Agency") pursuant

_____
*Retired Senior Judge assigned to the Superior Court.

to the Juvenile Act, 42 Pa.C.S. §§ 6301–6375. Both M.M.'s paternal grandparents and foster parents wish to adopt her and both filed petitions to adopt pursuant to the Adoption Act.

It is not clear why the trial court proceeded to act upon the grandparents' custody petition after the parental rights of M.M.'s parents were terminated instead of proceeding straight to the dueling adoption petitions. The competing desires to adopt M.M. are at the heart of this matter, and award of custody is a mere "temporary stopgap." *In the Matter of Adoption of Sturgeon*, 445 A.2d 1314, 1320 (Pa. Super. 1982). The issues we have before us, and all that we have decided today, relate to whether the paternal grandparents should have custody of M.M. As a procedural matter, the paternal grandparents may still attempt to pursue their petition for adoption, and they may choose to appeal an adverse determination, which will further delay permanency for M.M.[1]

---

[1] We note that both the Custody Act and the Adoption Act require the court to examine the best interest of M.M., although the Adoption Act permits a court to examine a child's best interest in more general terms. *Compare* 23 Pa.C.S. § 2724(b) (requiring courts to determine the desirability of an adoption based upon the "physical, mental and emotional needs and welfare of the child") *with* 23 Pa.C.S. § 5328 (requiring courts to apply 16 specific factors to determine whether any form of custody is in the best interest of a child). Nevertheless, an examination of M.M.'s best interest under the Adoption Act is sure to have substantial overlap with the analysis already performed by the court. Having ruled that it is not in the best interest of M.M. for paternal grandparents to have any form of custody, it seems the paternal grandparents would have an uphill battle to meet their burden of demonstrating that their proposed adoption of M.M. would be in her best interest.

The trial court appeared to operate under the impression that it had to grant or deny the paternal grandparents' request for physical and legal custody in its entirety. *See* Custody Case Trial Court Opinion, 12/1/2016, at 14 ("The [trial court] emphasizes that, unlike standard custody determinations, this case must end one way or another, with a grant of sole physical and legal custody to one party. Any other result would create, in essence, an indefinite dependency case with ongoing liabilities and pecuniary responsibilities for the [Agency].") This assumption is incorrect. Ultimately the trial court will need to rule upon the pending adoption petitions, and if the trial court chooses to grant the foster parents' adoption petition, the paternal grandparents' right to any form of custody of M.M. will be legally foreclosed.[2] *See* 23 Pa.C.S. § 5326. However, the trial court could have opted to allow the Agency to retain legal custody but permit the paternal grandparents to exercise partial physical custody up until the court ruled upon the adoption petitions.

Nevertheless, although not expressly phrased in this manner, it is clear from the trial court's opinion that it determined that it was not in

---

[2] Of course, if M.M.'s foster parents adopt her, they could permit M.M. to have contact with paternal grandparents informally or pursuant to the provisions of Act 101, 23 Pa.C.S. §§ 2371-2742. But if they adopt, this is a decision only they can make. *See In re Adoption of A.S.H.*, 674 A.2d 698, 701 (Pa. Super. 1996) (noting that an adoptive parent has discretion to determine the people with whom the child should associate once the parent adopts the child); *In re Adoption of G.L.L.*, 124 A.3d 344, 348 (Pa. Super. 2015 (holding that the Act 101 open adoption process is completely voluntary).

M.M.'s best interest to continue to visit with her paternal grandparents even in the interim. This appears to let the tail wag the dog; cutting off contact with paternal grandparents prevents any further relationship from being forged, thereby weakening the chances that it would be in M.M.'s best interest to be adopted by the paternal grandparents. *See In the Interest of R.W.*, __ A.3d __, 2017 WL 3568631 (Pa. Super. Aug. 18, 2017) (Strassburger, J., concurring) (noting that by ordering a "substantial reduction in visitation" prior to a hearing to terminate a parent's parental rights, the "trial court [] essentially stacked the deck against [the parent], making it that much more difficult to prevail in these proceedings"). However, the trial court's decision is supported by the record, and it is not an abuse of discretion.

Once parental rights to M.M. were terminated and the decree was no longer subject to appeal, the more prudent action would have been to proceed directly to a hearing on the pending adoption petitions to determine whether it was in the best interest of M.M. to be adopted by her foster parents or her paternal grandparents. This would have permitted the trial court to analyze her best interest with a direct comparison between the paternal grandparents and her foster parents, instead of having to go through the awkward exercise required by the Child Custody Act of applying the custody factors to compare custody by the Agency to custody by her paternal grandparents. Moreover, as M.M. had been in foster care for over

two years at the time the trial court began hearings regarding the paternal grandparents' custody petition, it certainly was in M.M.'s best interest to take steps to finalize her permanency, instead of wasting time deciding who should have custody of M.M. this far along in her dependency matter. However, be that as it may, the Majority correctly analyzes the issues before this Court and I join the Majority's memorandum in full.

Judge Stabile joins.